IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY N. HOUK,<br><br>                Petitioner,<br><br>  vs.<br><br>JIMMY WALKER, WARDEN (A),<br><br>                Respondent. | Case No. 2:08-cv-01100 (JKS)<br><br>MEMORANDUM DECISION |

Petitioner, Larry N. Houk, a state prisoner proceeding through counsel, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Houk is currently in the custody of the California Department of Corrections, incarcerated at the California State Prison– Sacramento, in Represa, California.  Respondent has filed his answer.  Houk has not filed a reply.[1]

I.  STATEMENT OF THE FACTS

As part of a drug investigation of defendant, Agent Jason Parker obtained the following search warrant: "YOU ARE THEREFORE COMMANDED TO SEARCH:
"1. 1632 Plumas Arboga Road, Yuba County, Ca. This location is further described as an approximately five-acre parcel with a large shop, several outbuildings, trailers, motor homes, and abandoned vehicles.
"2. 3306 Forbestown Road, Butte County, Ca. This location is further described as a parcel of land with a mobile home.

---

[1]  Houk did file a Traverse but stated that he would not be making a traverse argument because all of his pertinent arguments were made in his Petition.

> "Including buildings, trailers, the surrounding grounds and all containers therein and thereon which could contain any of the items sought which are found to be under the dominion and control of Larry Houk.
> "FOR THE FOLLOWING PERSON(S):
> "Houk, Larry Neil,....
> "FOR THE FOLLOWING VEHICLE(S):
> "Any and all vehicles and trailers found to be under the dominion and control of Larry Houk....
> "FOR THE FOLLOWING PROPERTY: Methamphetamine in liquid or powder form.... Paraphernalia used in the use of, packaging of, and distribution of methamphetamine, including but not limited to, scales, ..., plastic baggies,.... Articles of personal property tending to establish the identity of the persons in control and possession of ... vehicles, ... and containers where contraband and evidence may be found including but not limited to ... canceled mail, ... personalized I.D., driver's license,....[2]

Later that same day, Agent Parker gave Agent Hatfield a description of the truck that Houk was seen driving and asked Hatfield to locate Houk. Hatfield, who was driving an unmarked vehicle, saw Houk driving the described truck. Hatfield contacted two uniformed officers who were assisting in the investigation to effect a traffic stop of Houk. The officers stopped Houk, handcuffed him and placed him into a patrol car.

Additional officers arrived at the scene and, pursuant to the search warrant, searched the truck. In the passenger compartment the officers found two baggies containing methamphetamine. Beneath the hood they found a duffel bag containing more methamphetamine, Houk's driver's license, a prescription bottle with Houk's name on it, as well as indicia of drug trafficking .

At a pretrial hearing, Houk moved to invalidate the search warrant because many of the facts set forth in the supporting affidavit were stale, thereby rendering the warrant invalid. Houk also claimed the officers lacked a good faith belief in its validity. The trial court agreed that some of the

---

[2] Taken from the opinion of the Court of Appeal for the State of California, Third District. Lodged Doc. No. 7, pp. 118-19.

supporting facts were stale, but that the remaining facts supported probable cause sufficient for the warrant to issue.[3]

## II. PRIOR PROCEEDINGS

Following the denial of Houk's motion to suppress the evidence from the search of his truck, a jury convicted Houk of transportation of methamphetamine (Health and Safety Code, § 11379) and possession of methamphetamine for sale (Health and Safety Code, § 11378). Houk pleaded guilty to an additional count of failing to appear (Cal. Penal Code, § 1320(b)) and waived his right to a jury trial on the existence of his prior convictions and the service of six separate prison terms, all of which the court found to be true. The court sentenced Houk to state prison for 14 years, 8 months, and imposed various fines and other penalties.

On January 22, 2008, the Court of Appeal for the State of California, Third District, affirmed the judgment and sentence in a reasoned decision.[4]

Houk filed a habeas petition in the Yuba County Superior, which was denied on May 15, 2008. The court held that Houk's claims for relief were procedurally defaulted because he did not raise them on direct appeal.

Houk then filed a habeas petition with the California Court of Appeals, who denied his petition on July 3, 2008. Houk's habeas petition to the California Supreme Court was also denied.

On May 5, 2008, Houk filed a Petition for a Writ of Habeas Corpus in this Court, which he subsequently amended on August 1, 2008. On March 4, 2009, Houk filed a Second Amended

---

[3] Taken from the opinion of the Court of Appeal for the State of California, Third District. Lodged Doc. No. 7, p. 120.

[4] Lodged Doc. No. 7, pp. 117-28.

3

Petition for a Writ of Habeas Corpus with this Court. Houk raises seven grounds for relief. Despite the fact that the Yuba County Superior Court clearly applied a procedural bar to Houk's Habeas Petition, Respondent has not raised any affirmative defenses.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8] When a claim falls under the "unreasonable

---

[5] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412.

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established

4

application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[9] The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[10] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

---

precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

In applying this standard, this Court reviews the last reasoned decision by the state court,[14] which in this case was that of the California Court of Appeal.  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15]  This presumption applies to state trial courts and appellate courts alike.[16]

When there is no reasoned state-court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state-court decision was objectively unreasonable.[17]  The scope of this review is for clear error of the state-court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[18]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[19]

---

[14] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[15] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[16] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[17] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[18] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[19] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

6

IV.  DISCUSSION

In his Second Amended Petition to this Court, Houk raises seven grounds for relief:

1. Houk's trial counsel was ineffective for failing to move to suppress the evidence found in Houk's truck on the ground that his arrest and the search of the truck were not supported by probable cause.
2. Houk's appellate counsel was ineffective for failing to raise grounds 3-8 on direct appeal.
3. The trial court erred in denying motion to suppress because there was no showing by the prosecution that Agent Parker was aware of the circumstances pertaining to James Walter or his rice business.  Additionally, the Walter affidavit did not state that Walter was present at the 1632 Plumas Arboga address during March 2003– he lives in Grass Valley.
4. The trial court erred in denying motion to suppress– based on the totality of the circumstances as outlined in the information from CIR 13 and CIR 14, sufficient information remained to support a finding of probable cause.
5. Houk's trial counsel was ineffective for failing to adequately argue the suppression motion and present a defense at trial.
6. Houk's trial counsel was ineffective during sentencing because counsel did nothing to assist Houk during the sentencing process.
7. The trial court erred when it made this case the controlling case over Placer County's case.
8. The trial court erred when it failed to sentence Houk according to his plea deal with the prosecution.

For purposes of clarity and continuity, this Court will group similar claims together.

A.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first, sixth, and seventh grounds Houk claims that his trial counsel was ineffective. Under *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Houk must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[20]  A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[21]  Petitioner must show that

---

[20] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[21] *Id*.

defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[22] An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[23]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[24]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[25]

   i. Counsel Failed to Move to Suppress the Evidence Found in Houk's Truck

---

[22] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[23] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[24] *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420 (2009).

[25] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

In his first ground, Houk argues that his counsel was ineffective for failing to move to suppress the evidence that was obtained from his truck. Specifically, Houk asserts that his counsel should have argued that Houk's arrest and the subsequent search were not supported by probable cause. Houk raised this issue in his direct appeal, and the Court of Appeal denied it on the merits. Thus, this Court must evaluate the Court of Appeal's decision to determine whether it constituted an unreasonable application of federal law or an unreasonable determination of the facts.[26]

The Court of Appeal noted that the same redacted affidavit[27] which supported the issuance of the search warrant also gave the officers probable cause to arrest Houk.[28] The vehicle was then properly searched incident to Houk's lawful arrest. The Court of Appeal also found an independent basis for upholding the search of Houk's vehicle; namely, that the officers had probable cause sufficient to support a warrantless search of Houk's truck for evidence of his suspected drug possession and manufacture. The court concluded that since Houk's arrest and the subsequent search were so clearly supported by probable cause, any argument to the contrary by Houk's counsel would have been meritless and futile.[29]

---

[26] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[27] Houk's counsel challenged the validity of the search warrant on the basis that some of the facts set forth in the supporting affidavit were stale. The court agreed and removed the stale facts, but still found that the redacted affidavit supported a finding of probable cause sufficient for the warrant to issue.

[28] Lodged Doc. No. 7, p. 122. The Court of Appeal noted that the redacted affidavit established probable cause to believe that Houk had recently been in possession of methamphetamine and was presently manufacturing it. The court reasoned that this probable cause served the dual purpose of allowing the police to both obtain a search warrant *and* arrest Houk.

[29] Lodged Doc. No. 7, p. 125.

9

Houk has not met his burden by showing that the Court of Appeal's determination involved an unreasonable application of federal law.  Specifically, Houk is unable to show that his counsel's failure to raise these arguments during the suppression hearing resulted in any prejudice to him.[30] As noted above, the Court of Appeal clearly determined that Houk's counsel could not have successfully argued that the redacted affidavit, and ultimately the search warrant, did not contain probable cause to believe that Houk was involved in drug possession and manufacture.  Thus, Houk is unable to show that, had counsel raised the argument Houk now asserts, the result would have been different.[31]  Houk is not entitled to relief under his first ground.

### ii. Houk's Trial Counsel Was Ineffective for Failing to Adequately Argue the Suppression Motion and Present a Defense at Trial

In his fifth ground, Houk argues that his trial counsel was ineffective for failing to argue the suppression motion more vigorously and correct inconsistencies in the affidavit.  Houk also contends that his trial counsel did not present an adequate defense at trial.  Because this Court already addressed trial counsel's performance at the suppression hearing,[32] this Court will only address trial counsel's performance at trial.

This issue was not raised on direct appeal and was raised for the first time in Houk's habeas petition to the Yuba County Superior Court.  The court held that the issue had been procedurally defaulted and dismissed it without ruling on the merits.  Because there is no state court opinion for this Court to review, this Court must assume that the state court decided all the issues presented to it

---

[30] *Hill,* 474 U.S. at 57.

[31] *Id.*

[32] See this Court's analysis of ground one.  Because any challenge to the arrest and search would not have succeeded, trial counsel was not ineffective for failing to raise a frivolous argument.

10

and perform an independent review of the record to ascertain whether the assumed state court decision was objectively unreasonable.[33]

Houk contends that his trial counsel's performance was deficient because his counsel failed to call any witnesses on Houk's behalf and simply rested after the prosecution presented its case in chief.  Houk claims that he informed his counsel of twelve witnesses who had relevant information and were willing to testify on Houk's behalf.

While "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," an attorney's strategic decisions "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[34]  Although Houk claims that each of the twelve witnesses were willing to testify favorably on his behalf, he has only attached declarations from two of them.  Aside from his conclusory claims, Houk has not provided any proof that the remaining ten witnesses were both available and willing to provide favorable, relevant testimony.  Accordingly, Houk has not carried his burden of showing that his counsel's decision not to call these witnesses was unreasonable.[35]

While Houk has submitted declarations from both "James Walter" and "Stephanie Owens," it is unclear how their proffered testimony would have benefitted Houk's defense.  Walter declared that he owned the shop at 1632 Plumas Arboga Road. and that nobody, including Houk, was manufacturing drugs on the premises.  However, when the search warrant was returned, it did not

---

[33] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[34] *Strickland*, 466 U.S. at 690.

[35] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

11

list any evidence seized from 1632 Plumas Arboga Road.  Owens declared that she never smelled any chemical smells at the 3306 Forbestown address and that she often saw Houk come back from work and unload his tools.  Neither of these statements are relevant to show that Houk did not transport or possess methamphetamine.[36]  Accordingly, even if Walter and Owens had been willing and able to testify consistently with their declarations, their testimony would not have assisted Houk.  Thus, Houk is unable to show that had counsel called Houk's witnesses, the result would have been different.[37]

 Finally, Houk claims that his trial counsel was ineffective for failing to have the narcotics packaging tested for his fingerprints.  Houk overlooks the fact that he could have been aware of the presence of the narcotics and had legal possession over them without handling the individual packages.[38]  Actually, the jury was necessarily convinced that Houk had possession over the narcotics, despite the fact that the prosecution *did not* show that his fingerprints appeared on the packages.  Thus, Houk is unable to show that the decision of his trial counsel to not test the individual packages prejudiced his defense in any way.[39]  Houk is not entitled to relief on his fifth ground.

---

[36] Houk was not tried for the manufacture of methamphetamine.

[37] *Hill v. Lockhart,* 474 U.S. at 57.

[38] The jury was instructed that Houk had to exercise control over the narcotics *and* know of their nature and presence in order to convict him.  The absence or presence of Houk's fingerprints do little to prove or disprove whether Houk knew the narcotics were present and that they were, indeed, narcotics.  Indeed, the jury necessarily found that Houk new of the nature of the narcotics and knew of their presence *despite* a lack of evidence that Houk's fingerprints were on the individual packages.

[39] *Hill* at 57.

### iii. Houk's Trial Counsel Was Ineffective for Failing to Offer Meaningful Assistance During Sentencing

In his sixth ground Houk claims that his trial counsel was ineffective during sentencing because counsel did not know the sentencing laws and should have argued that the "Placer County Case" was controlling. Houk has requested that this Court consolidate this ground into his seventh ground. Accordingly, this Court will discuss this issue under Houk's seventh ground.

### B. DENIAL OF HOUK'S MOTION TO SUPPRESS

In his third and fourth grounds Houk claims that the trial court erred in denying his motion to suppress. Houk's Fourth Amendment argument is foreclosed by the Supreme Court decision in *Stone v. Powell*.[40] Under the holding in *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial.[41] The Ninth Circuit has made it clear that "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."[42] In this case, Houk was provided a fair and full opportunity to present his claims. He raised the issue in a pretrial motion, the trial judge held a hearing on the issue at which Houk was allowed to present evidence and examine witnesses, and the trial court made a factual finding.[43] Houk is not entitled to relief under his third and fourth grounds.

---

[40] *Stone v. Powell*, 428 U.S. 465 (1976).

[41] *Id.* at 482.

[42] *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996); *see Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005).

[43] *Moorman*, 426 F.3d at 1053.

13

C. THE TRIAL COURT ERRED WHEN IT MADE THIS CASE THE CONTROLLING CASE OVER PLACER COUNTY'S CASE

In his seventh ground Houk claims that another criminal case should have "controlled" his sentencing. Houk states that on October 14, 2005, he was sentenced to five years in state prison by the Placer County Court. Pursuant to outstanding warrants in Yuba County, Houk was transferred to Yuba for other criminal proceedings. On June 9, 2006, Houk was sentenced to 14 years, 8 months in prison by the Yuba County Superior Court. Houk asserts that the courts erroneously made the "Yuba County case" the "controlling case" for purposes of sentencing, and that the Placer County case should have been the "controlling case."

After carefully reviewing Houk's petition several times and consulting the Respondent's Answer, this Court is unable to decipher the exact nature of Houk's claim. Houk does not cite to any cases, either state or federal, which would provide this Court with any sort of guidance. While Houk does provide a citation to California Penal Code sections 669 and 1170.1, a review of these sections provides little insight. California Penal Code § 669 governs whether sentences will run concurrently or consecutively when a criminal defendant receives two judgments of conviction, whether in the same proceeding or court or in different proceedings or courts.[44] California Penal Code § 1170.1 governs the calculation of an aggregate term of imprisonment when a criminal defendant has sustained two or more felony convictions, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different

---

[44] California Penal Code § 669 reads, in relevant part:
   When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively.

court.[45] Section 1170.1 specifically states that, in calculating the aggregate term, "[t]he principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes . . . ."

Setting aside the fact that issues of solely state law are beyond the purview of this Court in a federal habeas proceeding,[46] section 1170.1 clearly states that the principal term is the greatest term of imprisonment. In this case, the principal term would be the Yuba County prison term. Thus, the plain language of the California Penal Code contradicts Houk's claim.

There also remains a sufficient basis, independent of the plain language of the California Penal Code, for denying Houk's seventh ground. Houk bears the burden of proving, by a

---

[45] California Penal Code § 1170.1 reads, in relevant part:
(a) Except as otherwise provided by law, and subject to Section 654, when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and Section 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses.

[46] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

preponderance of the evidence, that he is entitled to habeas relief.[47] Houk has not met his burden; he has failed to cite any relevant federal law which demonstrates that his sentence violated his federal constitutional rights and independent research by this Court has not revealed any.

Because Houk has failed to show that his sentence was improperly calculated, he has also failed to show that his attorney's performance during sentencing was ineffective or that his attorney's performance prejudiced his defense.[48] Houk is not entitled to relief under his sixth or seventh grounds.[49]

### D.  THE TRIAL COURT ERRED WHEN IT FAILED TO SENTENCE HOUK ACCORDING TO HIS PLEA AGREEMENT WITH THE PROSECUTION

In his eighth ground Houk claims that the trial court failed to sentence him in accordance with a plea agreement he had reached with the prosecution. Houk cites a colloquy wherein the prosecution informed the trial court of an offer it had made to Houk:

> "For the record, Your Honor, the offer at this point is for Mr. Houk to admit the priors that are alleged in the case he went to trial on and was convicted. The People have filed a 1320(b) and a 12022.1 allegation. The offer at this point is for him to admit the priors, admit the – plead guilty to the 1320, and we would not pursue the out-on-bail/O.R. enhancement in the newest filing. That's a total of two years."[50]

The record is clear that Houk entered a plea of "no contest" to the 1320 charge, and in that same proceeding, the court struck the CRF-06-167 enhancement.[51] The record of sentencing is also

---

[47] *Silva*, 279 F.3d at 835; *see Wood*, 516 U.S. at 8 (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[48] *Strickland*, 466 U.S. at 687.

[49] Houk requested this Court consider the merits of his sixth ground in its analysis of his seventh ground.

[50] Lodged Doc. No. 7, p. 104.

[51] Lodged Doc. No 2, pp. 338-47.

16

clear that the court did not apply a CRF-06-167 enhancement when it calculated Houk's sentence. Thus, it is clear to this Court that Houk received the benefit of this agreement from both the prosecutor and the sentencing judge. Accordingly, Houk is not entitled to relief on his eighth ground.

### E. HOUK'S APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE GROUNDS THREE THROUGH EIGHT ON DIRECT APPEAL

In his second ground Houk claims that his appellate counsel was ineffective because he failed to raise grounds three through eight on direct appeal. The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[52] Each of the issues that Houk wanted his appellate counsel to raise was without merit. The Court of Appeal indirectly addressed the merits of Houk's Fourth Amendment challenges and explicitly found that the evidence against Houk had been properly admitted. Additionally, Houk has failed to show that the reasoned, strategic decisions of his trial counsel prejudiced him in any way. Finally, Houk's objections to the calculation of his sentence are clearly belied by the record. Accordingly, Houk has failed to overcome the strong presumption that his appellate counsel's performance fell within the wide range of reasonable professional assistance or that his defense was prejudiced by any alleged omission as required by *Strickland-Hill*. Houk is not entitled to relief on his second ground.

### V. CONCLUSION and ORDER

Houk is not entitled to relief under any ground raised in the Petition. Accordingly,

---

[52] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[53]

The Clerk of the Court to enter judgment accordingly.

Dated: July 23, 2010

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge

---

[53] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.